IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAR D. MANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ACH FOOD COMPANIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT AT LAW**

NOW COMES, the Plaintiff, JAMAR D. MANN, by and through his attorney, Anthony J. Peraica of Anthony J. Peraica & Associates, Ltd., complaints against the Defendant, ACH FOOD COMPANIES, INC., and states as follows:

## **JURISDICTION AND VENUE**

1.      This action is brought to remedy unlawful discrimination based upon race, color, sex, and retaliation in violation of the Civil Rights Act, Title VII, 42 U.S.C. §2000e et seq., and to redress the deprivation of Plaintiff's rights as secured by the United States Constitution. Plaintiff seeks legal and equitable relief, including, but not limited to, rehiring and adjustment of seniority records, lost pay and benefits, compensatory and punitive damages, interest, and attorney's fees.

2.      This Court has jurisdiction pursuant to 28 U.S.C.§§1331 and 1343(3).

3.      Venue is proper under 28 U.S.C. §1391(b). The parties reside and all transactions and occurrences complained of occurred in the Northern District of Illinois.

## **PARTIES**

4.      Plaintiff, JAMAR D. MANN (hereinafter "Plaintiff" or "MANN"), was at all

times relevant a resident of the Village of Maywood, County of Cook, State of Illinois in the United States of America.

5.      ACH FOOD COMPANIES, INC., a foreign corporation, is incorporated in the State of Delaware, with its headquarters located at One Parkview Plaza, Suite 500, Oakbrook Terrace, Illinois 60181.

6.      ACH FOOD COMPANIES, INC. has a manufacturing plant located at 6400 South Archer Road, in the Village of Summit-Argo, County of Cook, State of Illinois.

## FACTS

7.      Plaintiff is an African-American male.

8.      Defendant employs more than 15 employees and is an "employer" under the Title VII.

9.       In January 2017, Plaintiff was working as a temp to hire at ACH Food Companies, Inc.

10.      On or about January 9, 2017, Plaintiff's supervisor Steve Berkshire called the Plaintiff the N-word.

11.      Plaintiff reported the incident to his superior, Tim Welch, who dismissed it as that is how Berkshire is.

12.      Tim Welch told the Plaintiff that if he wanted a job with the company that he would have to deal with Berkshire's attitude.

13.      In or about July 2017, Plaintiff was hired as a full time employee to work in the Defendant's manufacturing plant in Summit-Argo, Illinois.

14.      Plaintiff continued receiving discriminatory remarks from Steve Berkshire.

15.      In December 2018, Tim Welch and Steve Berkshire learned that the Plaintiff is

bi-sexual.

16.     Steve Berkshire started going into Plaintiff's office making sex jokes and asking the Plaintiff if he was going on a date with his man.

17.     Plaintiff reported the incidents to the Defendant's manager Jon Darmstat, who then removed Berkshire as Plaintiff's supervisor and instructed the Plaintiff to get his orders/instructions from him (Darmstat).

18.     Although Plaintiff no longer reported to Berkshire, Berkshire continued trying to get under the Plaintiff's skin.

19.     In March 2019, Berkshire was sticking up his middle finger and directing it towards the Plaintiff.

20.     Plaintiff reported the March incident to HR manager, Lettie Spiak, who suspended Berkshire for two days.

21.     On March 23, 2020, Defendant's new manager over the Plaintiff, Jeff Finley, assigned Steve Berkshire to be Plaintiff's immediate supervisor.

22.     Plaintiff advised Jeff Finley of the harassment he had encountered at the hands of Steve Berkshire; but Finley dismissed it as Berkshire is from the streets and as a supervisor must be allowed to supervise. Finley told the Plaintiff that if he wanted to stay employed with the company, Plaintiff would have to deal with Berkshire.

23.     Plaintiff also advised the new HR manager, Justina Delangel, of the situation with Steve Berkshire but she stated that was not brought to her attention and she disregarded it.

24.     Plaintiff loved his job and working for the Defendant; he hoped it would be a long-term career.

25.     Plaintiff's most recent position, in 2020, was Parts Coordinator.

26.     Around the end of April 2020, Plaintiff's grandmother passed away from the corona virus, for which he took bereavement time and had to quarantine thereafter.

27.     While Plaintiff was out of the office for bereavement and quarantine, two cases of cleaning wipes came up missing.

28.     Upon Plaintiff's return to work on May 11, 2020, Manager Finley inquired of the Plaintiff as to what happened to the cleaning wipes. To which Plaintiff responded that Tim Welch was supposed to put them in the stockroom, while Plaintiff was out, and Plaintiff did not know what happened to them.

29.     On May 15, 2020, a box of face masks had been taken out of the Defendant's UPS drop off station, while Tim Welch and the Plaintiff were on lunch.

30.     Plaintiff, as Parts Coordinator, investigated the missing box of face masks.

31.     Plaintiff followed up with the UPS driver and filed a missing package claim, checked with the other companies that the Defendant shares the address with, and spoke with the receiving lead.

32.     Plaintiff learned that the warehouse supervisor Mike Stivavlious had taken one case of cleaning wipes and one of the senior Union works had taken two cases of the cleaning wipes. They put the items into their offices without permission. Plaintiff reported what he had learned his manager.

33.     On or about May 26, 2020, at the end of shift, Plaintiff was called to the manager's office, where the plant manager, HR assistant and Plaintiff's manager were, and was told that he was being suspended pending an investigation of missing supplies.

34.     Plaintiff was escorted off the Defendant's property by his manager and was told that he would be contacted by HR.

35.    Upon information and belief, Plaintiff had no prior disciplinary actions or write-ups.

36.    Defendant was not missing any supplies; the N95 masks and cleaning wipes were unknowingly being stored by ACH Foods employee Craig Pittman, Jr. in his office to keep track of stock items that run out quickly.

37.    On information and belief, upon learning of the investigation, Pittman returned the items to the stock room on May 26, 2020.

38.    On June 16, 2020, Plaintiff reached out via email to the Defendant's HR manager, Justina Delangel, and Plant Manager, Brad Burkenpas, regarding his verbal suspension and not hearing from anyone since May 26, 2020.

39.    Defendant ACH Food Companies, Inc. terminated Plaintiff for violation of Employee Conduct, Misappropriation of Company property/supplies and performance.

40.    On September 4, 2020, Plaintiff filed a charge of discrimination with the EEOC alleging discrimination based on race, color, sex, and retaliation from the time period of July 1, 2017 until June 16, 2020. Exhibit A.

41.    On March 16, 2021, EEOC issued a Notice of Right to Sue. Exhibit B.

42.    This complaint is filed within the 90-day period of the Notice of Right to Sue.

## COUNT I: DISCRIMINATION BASED ON RACE

43.    Plaintiff incorporates Paragraphs one (1) through forty-two (42) above, as if set forth herein as paragraph 43 of Count I.

44.    At all times throughout the course of employment, Plaintiff was qualified for his position and performed his job to the legitimate expectation of his employer and beyond.

45.    The harassment Plaintiff received from Steve Beckshire was continuous and

intentional.

46.     The harassment had negatively impacted the terms and conditions of Plaintiff's employment.

47.     Although Plaintiff reported the harassment he was being subjected to, Defendant and its agents, management and employees failed to address the racial discrimination.

48.     Caucasian employees were treated more favorably than Plaintiff in that they were not harassed, subject to different terms and conditions of employment, and/or terminated.

49.     The harassment, differing terms and conditions of employment, and termination of Plaintiff constituted and was the result of discrimination based upon race by the Defendant, in violation of Title VII.

50.     Plaintiff was harassed, subjected to differing terms and conditions of employment, demoted, and terminated by Defendant because of Plaintiff's race and any proffered reason to the contrary by Defendant is pretext for unlawful discrimination.

51.     Any reason given for Defendant's adverse actions are a pretext for racial discrimination, in that Plaintiff would not have been harassed, subjected to differing terms and conditions of employment, or terminated but for Defendant's motive to discriminate against Plaintiff due to his race.

52.     By the above-described actions, but not limited to the same, Defendant discriminated against Plaintiff based upon his race, in violation of Title VII, and treated Caucasian employees more favorably.

53.     By the above-described actions, but not limited to the same, Defendant took adverse employment action against Plaintiff which seriously affected his physical, financial, and psychological well-being, and caused him to suffer significant damages.

54.      Defendant's wrongful acts, individually and/or by and through their agents, were intentional, willful and wanton, and in total disregard and reckless indifference to Plaintiff's rights under Title VII.

55.      Plaintiff has exhausted his administrative remedies by filing a Charge of Discrimination, whereupon the EEOC issued a right to sue letter.

56.      As a direct and proximate result of the Defendant's actions, Plaintiff suffered severe financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

57.      The Defendant's actions were willful, wanton, malicious and oppressive and justify the awarding of exemplary, liquidated and/or punitive damages.

58.      Plaintiff is entitled to the recovery of compensatory damages.

59.      An award of punitive damages is appropriate and necessary to deter Defendants from committing similar acts of discrimination in the future.

WHEREFORE, Plaintiff Jamar D. Mann asks that judgment be entered against Defendant ACH FOOD COMPANIES, INC. as follows:

A.      Ordering the Defendant to immediately reinstate Plaintiff to a position with Defendant that is commensurate with his skills and experience;

B.      Ordering the Defendant to pay to Plaintiff damages for loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant's wrongful acts, along with interest;

C.     Ordering the Defendant to pay to Plaintiff the compensatory damages incurred as a result of its wrongful acts;

D.     Ordering the Defendant to pay to Plaintiff punitive damages;

E.     Ordering the Defendant to pay to Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant's wrongful and willful conduct; and

F.     Awarding to Plaintiff such other relief as this Court deems proper.

## COUNT II: DISCRIMINATION BASED ON COLOR

60.     Plaintiff incorporates Paragraphs one (1) through forty-two (42) above, as if set forth herein as paragraph 60 of Count II.

61.     Plaintiff's skin pigment is dark.

62.     At all times throughout the course of employment, Plaintiff was qualified for his position and performed his job to the legitimate expectation of his employer and beyond.

63.     The harassment Plaintiff received, because of his skin color, from Steve Beckshire, who is Caucasian, was continuous and intentional.

64.     The harassment based on skin color had negatively impacted the terms and conditions of Plaintiff's employment.

65.     Although Plaintiff reported the harassment he was being subjected to, Defendant and its agents, management and employees failed to address the color discrimination.

66.     Caucasian employees were treated more favorably than Plaintiff in that they were not harassed, subject to different terms and conditions of employment, and/or terminated.

67.     The harassment based on skin color, differing terms and conditions of

employment, and termination of Plaintiff constituted and was the result of discrimination based upon skin color by the Defendant, in violation of Title VII.

68.     Plaintiff was harassed, subjected to differing terms and conditions of employment, demoted, and terminated by Defendant because of Plaintiff's skin color and any proffered reason to the contrary by Defendant is pretext for unlawful discrimination.

69.     Any reason given for Defendant's adverse actions are a pretext for color discrimination, in that Plaintiff would not have been harassed, subjected to differing terms and conditions of employment, or terminated but for Defendant's motive to discriminate against Plaintiff due to his skin color.

70.     By the above-described actions, but not limited to the same, Defendant discriminated against Plaintiff based upon his skin color, in violation of Title VII, and treated Caucasian employees more favorably.

71.     By the above-described actions, but not limited to the same, Defendant took adverse employment action against Plaintiff which seriously affected his physical, financial, and psychological well-being, and caused him to suffer significant damages.

72.     Defendant's wrongful acts, individually and/or by and through their agents, were intentional, willful and wanton, and in total disregard and reckless indifference to Plaintiff's rights under Title VII.

73.     Plaintiff has exhausted his administrative remedies by filing a Charge of Discrimination, whereupon the EEOC issued a right to sue letter.

74.     As a direct and proximate result of the Defendant's actions, Plaintiff suffered severe financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals

and benefits of employment, damage to reputation, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

75.     The Defendant's actions were willful, wanton, malicious and oppressive and justify the awarding of exemplary, liquidated and/or punitive damages.

76.     Plaintiff is entitled to the recovery of compensatory damages.

77.     An award of punitive damages is appropriate and necessary to deter Defendants from committing similar acts of discrimination in the future.

WHEREFORE, Plaintiff Jamar D. Mann asks that judgment be entered against Defendant ACH FOOD COMPANIES, INC. as follows:

A.  Ordering the Defendant to immediately reinstate Plaintiff to a position with Defendant that is commensurate with his skills and experience;

B.  Ordering the Defendant to pay to Plaintiff damages for loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant's wrongful acts, along with interest;

C.  Ordering the Defendant to pay to Plaintiff the compensatory damages incurred as a result of its wrongful acts;

D.  Ordering the Defendant to pay to Plaintiff punitive damages;

E.  Ordering the Defendant to pay to Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant's wrongful and willful conduct; and

F.  Awarding to Plaintiff such other relief as this Court deems proper.

## COUNT III: DISCRIMINATION BASED ON SEX

78.     Plaintiff incorporates Paragraphs one (1) through forty-two (42) above, as if set forth herein as paragraph 78 of this Count III.

79.     At all times throughout the course of employment, Plaintiff was qualified for his position and performed his job to the legitimate expectation of his employer and beyond.

80.     Defendant's knowledge of Plaintiff being bi-sexual, gender non-conformity, caused Defendant's supervisors, agents, management, and employees to treat the Plaintiff differently than those who conformed to traditional gender roles.

81.     Male employees, including Steven Beckshire and Tim Welch, treated other male employees more favorably than Plaintiff, in that they were not harassed, subject to different terms and conditions of employment, and/or terminated because of their sexual orientation.

82.     The harassment, differing terms and conditions of employment, and termination of Plaintiff constituted and was the result of discrimination based upon sexual orientation by the Defendant, in violation of Title VII.

83.     Plaintiff was harassed, subjected to differing terms and conditions of employment, demoted, and terminated by Defendant because of Plaintiff's sexual orientation and any proffered reason to the contrary by Defendant is pretext for unlawful discrimination.

84.     Any reason given for Defendant's adverse actions are a pretext for sex/sexual orientation discrimination, in that Plaintiff would not have been harassed, subjected to differing terms and conditions of employment, or terminated but for Defendant's motive to discriminate against Plaintiff due to his sexual orientation.

85.     By the above-described actions, but not limited to the same, Defendant's

discriminated against Plaintiff based upon his sexual orientation, in violation of Title VII, and treated conforming male employees more favorably.

86.     By the above-described actions, but not limited to the same, Defendant took adverse employment action against Plaintiff which seriously affected his physical, financial, and psychological well-being, and caused him to suffer significant damages.

87.     Defendant's wrongful acts, individually and/or by and through their agents, were intentional, willful and wanton, and in total disregard and reckless indifference to Plaintiff's rights under Title VII.

88.     Plaintiff has exhausted his administrative remedies by filing a Charge of Discrimination, whereupon the EEOC issued a right to sue letter.

89.     As a direct and proximate result of the Defendant's actions, Plaintiff suffered severe financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

90.     The Defendant's actions were willful, wanton, malicious and oppressive and justify the awarding of exemplary, liquidated and/or punitive damages.

91.     Plaintiff is entitled to the recovery of compensatory damages.

92.     An award of punitive damages is appropriate and necessary to deter Defendant from committing similar acts of discrimination in the future.

WHEREFORE, Plaintiff Jamar D. Mann asks that judgment be entered against Defendant ACH FOOD COMPANIES, INC. as follows:

A.  Ordering the Defendant to immediately reinstate Plaintiff to a position with

Defendant that is commensurate with his skills and experience;

B.  Ordering the Defendant to pay to Plaintiff damages for loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant's wrongful acts, along with interest;

C.  Ordering the Defendant to pay to Plaintiff the compensatory damages incurred as a result of its wrongful acts;

D.  Ordering the Defendant to pay to Plaintiff punitive damages;

E.  Ordering the Defendant to pay to Plaintiff the attorneys' fees, court costs, and disbursements which Plaintiff has incurred and will incur as a result of Defendant's wrongful and willful conduct; and

F.  Awarding to Plaintiff such other relief as this Court deems proper.

## COUNT IV: RETALIATION

93.     Plaintiff incorporates Paragraphs one (1) through ninety-two (92) above, as if set forth herein as paragraph 93 of this Count IV.

94.     At all times throughout the course of employment, Plaintiff was qualified for his position and performed his job to the legitimate expectation of his employer and beyond.

95.     Plaintiff was retaliated against for reporting Steve Berkshire for his discriminatory actions.

96.     Defendant's wrongful acts, individually and/or by and through their agents, were intentional, willful and wanton, and in total disregard and reckless indifference to Plaintiff's rights.

97.     Plaintiff has exhausted his administrative remedies by filing a Charge of

Discrimination, whereupon the EEOC issued a right to sue letter.

98.     As a direct and proximate result of the Defendant's actions, Plaintiff suffered severe financial damages, including but not limited to loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, other compensatory damages, attorneys' fees, court costs, and other damages allowable under Title VII.

99.     The Defendant's actions caused Plaintiff great mental anguish, humiliation, anxiety, loss of sleep, and other emotional and psychological distress.

100.     The Defendant's actions were willful, wanton, malicious and oppressive and justify the awarding of exemplary, liquidated and/or punitive damages.

101.     Plaintiff is entitled to the recovery of compensatory damages.

102.     An award of punitive damages is appropriate and necessary to deter Defendant from committing similar acts of retaliation in the future.

WHEREFORE, Plaintiff Jamar D. Mann asks that judgment be entered against Defendant ACH FOOD COMPANIES, INC. as follows:

A.  Ordering the Defendant to immediately reinstate Plaintiff to a position with Defendant that is commensurate with his skills and experience;

B.  Ordering the Defendant to pay to Plaintiff damages for loss of wages, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, and other compensatory damages resulting from Defendant's wrongful acts, along with interest;

C.  Ordering the Defendant to pay to Plaintiff the compensatory damages incurred as a result of its wrongful acts;

D.   Ordering the Defendant to pay to Plaintiff punitive damages;

E.   Ordering the Defendant to pay to Plaintiff the attorneys' fees, court costs, and

disbursements which Plaintiff has incurred and will incur as a result of Defendant's wrongful and

willful conduct; and

F.   Awarding to Plaintiff such other relief as this Court deems proper.

PLAINTIFF DEMANDS A TWELVE (12) PERSON JURY TRIAL

Respectfully submitted,

JAMAR D. MANN

By:      /s/ Anthony J. Peraica_____
One of His Attorneys

ANTHONY J. PERAICA, ARDC NO.: 6186661
ANTHONY J. PERAICA & ASSOCIATES, LTD.
ATTORNEYS FOR PLAINTIFF
5130 SOUTH ARCHER AVENUE
CHICAGO, ILLINOIS  60632
773-735-1700
support@peraica.com